IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02478-RMR-KLM

JOSEPH TORREZ,

      Plaintiff,

v.

EL PASO COUNTY SHERIFF'S DEPARTMENT,
BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF EL PASO,
GRACE EASTHAM, El Paso County Jail Technician, and
DEPUTIES JOHN DOE 1-4,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)** [#21][1] (the "Motion").  Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#23] in opposition to the Motion [#21], Defendants filed a Reply [#24].  The Motion [#21] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1.  *See* [#22].  The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently

---

[1] "[#21]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In addition, a pro se litigant must follow the same procedural rules that govern other litigants.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

advised in the premises.   For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#21] be **DENIED in part and GRANTED in part**.

### I. Background[3]

On July 2, 2015, Plaintiff was sentenced to two years in the El Paso County Jail, to run concurrently with all current and former time, in El Paso County case 15CR1210. *Compl.* [#4] ¶ 5.  Plaintiff was in custody at the time of his sentencing, had already been in custody prior to sentencing, and remained in custody until his sentence in case 15CR1210 expired.  *Id.* ¶ 6.  There was no language in the sentencing order stating that Plaintiff was to begin serving the sentence in 15CR1210 after his release on his other concurrent sentences.  *Id.* ¶ 7.

On April 14, 2020, Plaintiff was arrested and taken into custody by deputies of the El Paso County Sheriff's Department and transported to the El Paso County Jail.  *Id.* ¶ 2.  Plaintiff was advised that he was taken into custody in connection with El Paso County case 15CR1210 to serve the sentence in that case, but he alleges that he had already served that sentence in full.  *Id.* ¶¶ 3-4.  When he was arrested, he informed the Doe Defendants that the warrant was invalid and that they were falsely arresting him because the sentence for which he was being arrested had already been served.  *Id.* ¶ 8.  The Doe Defendants ignored his statements and arrested him anyway, taking him to the El Paso County Jail and placing him in the custody of the El Paso County Sheriff's Department.  *Id.* ¶ 9.

---

[3]  For the purposes of resolving the Motion [#21], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1].  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

After he was booked, he told several deputies and Defendant Grace Eastham ("Eastham"), an El Paso County Jail Technician, that he had been wrongfully arrested and had already served his sentence. *Id.* ¶ 10. He contacted Defendant Eastham several times, and she told him that she would not look into the issue and that he had to petition the courts himself. *Id.* ¶ 11. After repeated inquiries by Plaintiff and submission of the sentencing orders (via outside help) in 15CR1210 and another of Plaintiff's criminal cases, 2015CR3729, Defendant Eastham said that Plaintiff's sentence in 15CR1210 was supposed to run consecutively to his other cases. *Id.* ¶ 12. Plaintiff wrote several kite requests and several grievances regarding the issue but was denied and ignored. *Id.* ¶ 13. Eventually, with further outside help, Plaintiff was able to establish that he had been wrongfully confined. *Id.* ¶ 14. On May 11, 2020, he was released after having served twenty-four days after a paralegal helped him correspond with the Clerk of Court for El Paso County, since Defendant Eastham would not. *Id.* Robin Parker, a Clerk of Court for El Paso County, confirmed that the sentence was concurrent and had already been served. *Id.*

As a result of these events, Plaintiff brings five claims: (1) Claim One: "false arrest and false imprisonment in violation of the Fourth Amendment and excessive confinement in violation of the Eighth Amendment," as well as a due process claim under the Fourteenth Amendment,[4] against Defendant Eastham and the Doe Defendants; (2) Claim Two: violation of due process in violation of the Fourteenth Amendment," against the El Paso Sheriff's Department; (3) Claim Three: "respondeat superior under Colorado state

---

[4] Although not part of the heading under Claim One, Plaintiff mentions the Fourteenth Amendment in the body of this claim, and therefore, liberally reading the Complaint [#1] as the Court must, *see Haines*, 404 U.S. at 520-521, the Court addresses a Fourteenth Amendment claim against here as well. *Compl.* [#1] at 8 ¶ 52.

law and municipal liability under *Monell*," against the Board of County Commissioners of for the County of El Paso and the El Paso County Sheriff's Department; (4) Claim Four: "infliction of emotional distress," asserted against Defendant Eastham and the Doe Defendants, and (5) Claim Five: "negligence: negligent hiring, negligent retention, negligent supervision, negligent infliction of emotional distress," against the Board of County Commissioners for the County of El Paso and the El Paso County Sheriff's Department. *Id.* ¶¶ 15-111. Plaintiff seeks damages and declaratory/injunctive relief. *Id.* at 15. In the present Motion [#21], Defendants (except for the Doe Defendants, who are not parties to the Motion [#21]) seek dismissal of all claims asserted against them.

## II. Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, with a factual attack, the moving party challenges the facts upon

which subject-matter jurisdiction depends. *Id.* at 1003. When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

**B.      Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations" (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor

does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that [the] plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that [the] plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

## III.  Analysis

The Court has been unable to find a case with similar allegations, where a convicted prisoner served his time, was released, and then was taken back into custody under the mistaken belief that he had been released early in error.  Nevertheless, the Court agrees with Defendants that this case appears to fall into the "overdetention" category of cases, where a convicted prisoner's sentence (or the holding of a pretrial detainee) is alleged to be prolonged past a date when the person was legally supposed to be released.  In short, "overdetention" generally means that "the plaintiff has been imprisoned by the defendant for longer than legally authorized, whether because the

plaintiff's incarcerative sentence has expired or otherwise." *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010).

## A.    Claim One

Here, the Court examines the constitutional claims under Claim One to the extent asserted against Defendant Eastham.

### 1.    Monetary Relief

Defendant Eastham asserts that she is entitled to qualified immunity on Plaintiff's claims to the extent that Plaintiff seeks monetary relief from her.  Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.  *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). A government official is entitled to qualified immunity from liability for civil damages in her individual capacity when her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Id.* at 818 (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).  The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm."  *Harlow*, 457 U.S. at 807.  Thus, a government official is entitled to qualified immunity in "[a]ll but

the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

> ### a.   Fourth Amendment

Defendant Eastham argues that this claim must be dismissed as a matter of law, because an overdetention claim cannot be based on the Fourth Amendment. *Reply* [#24] at 2 (citing *Sloan v. Pugh*, No. 05-cv-00527-REB-CBS, 2005 WL 2464678, at *1 n.2 (D. Colo. Oct. 4, 2005)).

In *Sloan v. Pugh*, the Court noted that the plaintiff "cites to no case, and I have found none, holding that the Fourth Amendment creates a constitutional right *under circumstances similar to those implicated in this case*."  2005 WL 2464678, at *1 n.2 (emphasis added).  That case involved allegations that the plaintiff was incarcerated "for an additional 127 days past the date on which his sentence actually expired."  *Id.* at *1. In *Farrell v. Colorado*, No. 14-cv-01882-MSK-CBS, 2015 13730678, at *3 (D. Colo. Nov. 24, 2015), where the plaintiff alleged that "his sentence discharge date was wrongfully extended by 7 days because he was not given all of the earned time credit for which he was eligible following the expungement of a disciplinary conviction," the Court similarly held that the Fourth Amendment was inapplicable.  Unlike the present case, however, neither *Sloan* nor *Farrell* concerned a plaintiff who was incarcerated, released, and then arrested again based on the mistaken belief that he had been accidentally released prematurely.  Both of those cases concerned the failure to release a prisoner who had allegedly successfully served his sentence and were kept incarcerated for additional time. The Court is therefore not convinced by *Sloan* or *Farrell* that the Fourth Amendment's prohibition on false arrest may *never* be implicated in an overdetention case.

However, even assuming the applicability of the Fourth Amendment, Plaintiff alleges nothing in the Complaint [#1] to insinuate that Defendant Eastham arrested Plaintiff herself or otherwise caused his arrest, directly or indirectly. *See Reply* [#24] at 2. In his Response [#23], Plaintiff confirms: "Indeed, [Plaintiff] does not allege that [Defendant] Eastham [caused Plaintiff to be arrested or transported to the jail] because she did not; the unidentified Doe officers caused him to be arrested and transported . . . ."[5]  *Response* [#23] at 2.

In *Moya v. Garcia*, 895 F.3d 1229, 1231 (10th Cir. 2018), the plaintiffs "were arrested based on outstanding warrants and detained in a county jail for 30 days or more prior to their arraignments," which violated the 15-day requirement of New Mexico law, and the plaintiffs then brought suit asserting claims of overdetention.  The defendants were the sheriff and the warden of the jail, but the court held that they did not cause the arraignment delays because "the arraignments could not be scheduled by anyone working for the sheriff or wardens; scheduling of the arraignments lay solely with the state trial court."  *Moya*, 895 F.3d at 1231.  Even though the plaintiffs argued that the defendants "could have mitigated the risk of overdetention by keeping track of whether detainees had been timely arraigned, requesting arraignments for those who had been overdetained, or bringing detainees to court prior to a scheduled arraignment," the court held that this did not change the fact that "the arraignments could only be scheduled by

---

[5]  In his Response [#23], Plaintiff then immediately appears to contradict this statement, saying that the Doe Defendants took this action "presumably after having been directed to do so by Defendant Eastham since part of her function as a corrections technician in her position is to verify all sentencing orders from the court and coordinate with arresting officers before taking a person into custody."  *Response* [#23] at 2.  However, Plaintiff cannot  "effectively amend [his] Complaint by alleging new facts in [his] response to a motion to dismiss."  *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004).

the court itself," and there was no indication that "the state trial court would have conducted the arraignments and ordered release any earlier than it did." *Id.* at 1234 (citing *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (holding that the county did not cause the overdetention, reasoning that the county could only ask for federal help and that the county lacked the "ability itself to bring the prisoner before the appropriate judicial officer")).

Although the circumstances of this case differ somewhat from *Moya*, the Court finds that *Moya*'s general holding is equally applicable here, i.e., that without adequate allegations that the defendant caused the overdetention, no claim is stated.  Here, the Court finds that, even assuming the propriety of a Fourth Amendment claim in the overdetention context, Plaintiff has failed to state a claim here because he has not sufficiently alleged that Defendant Eastham caused the arrest resulting in his overdetention.  Thus, she is entitled to qualified immunity.

Accordingly, the Court **recommends** that Plaintiff's Fourth Amendment claim against Defendant Eastham in her individual capacity for monetary damages be **dismissed without prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should not attach to a dismissal where a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### b.    Eighth Amendment

"[I]mprisonment beyond one's term can constitute cruel and usual punishment for purposes of the Eighth Amendment."  *Waynewood v. Nelson*, No. 15-cv-00946-MEH, 2016 WL 54122, at *1 (D. Colo. Jan. 5, 2016) (citing *Mitchell v. N.M. Dep't of Corrs.*, 996

F.2d 311, 1993 WL 191810, at *3 (10th Cir. June 1, 1993) (unpublished table opinion)). Stating such a claim under the Eighth Amendment requires a plaintiff to adequately allege that the defendant "acted with deliberate indifference to whether the plaintiff suffered an unjustified deprivation of his liberty." *Waynewood*, 2016 WL 54122, at *1.  This requires allegations supporting three elements: (1) the defendant knew of the plaintiff's problem and therefore knew that unwarranted punishment may currently or in the future be inflicted; (2) the defendant "failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight"; and (3) "a causal connection between the official's response to the problem and the infliction of the unjustified detention."  *Id.* at *2 (quoting *Sample v. Dierks*, 885 F.2d 1099, 1108-10 (3d Cir. 1989)).

Factually, the most similar case the Court has found to the allegations of this case is *Routt v. Howry*, No. CIV-18-127-D, 2019 WL 6131438, at *3 (W.D. Okla. Nov. 19, 2019), where the plaintiff alleged that "he noticed on his time sheet that he was not being credited for time served," that he notified the defendants, but that they "refused to correct the error, . . . because the credit for time served Plaintiff claimed was not reflected in the pertinent judgment and sentence."  *Routt*, 2019 WL 6131438, at *3.  The plaintiff further alleged that he "engaged the grievance process," but he did "not allege he produced proper documentation or credible evidence in support of his assertions."  *Id.*  The plaintiff then alleged that "once the judgment and sentence were corrected, he received a copy of the documents on or about March 17, 2016," and "[o]n March 28, Plaintiff was awarded credits for time served and immediately discharged."  *Id.*

The plaintiff in *Routt* claimed that the defendants "violated his Eighth and Fourteenth Amendment rights by incarcerating him beyond the expiration of his sentence." *Id.* at *1. The defendants argued that "they had no constitutional obligation to 'undertake an investigation that includes searching court records, reviewing court transcripts, and questioning judges and criminal defense attorneys regarding the terms of the plea agreement, when a prisoner claims [his sentence is being incorrectly administered].'" *Routt*, 2019 WL 6131438, at *2.

The court held that "[i]t would not have been reasonable for Defendants to believe that by following a facially valid judgment and sentence they were violating Plaintiff's constitutional rights." *Id.* at *3 (citing *Alston v. Read*, 663 F.3d 1094 (9th Cir. 2011) ("State corrections officials did not have clearly established duty to seek out original court records in response to state prisoner's unsupported assertion that he was being overdetained, and thus, state officials were entitled to qualified immunity from liability for their failure to do so, in prisoner's § 1983 claim alleging overdetention in violation of due process and the Eighth Amendment.")). The court noted that "the Oklahoma Court of Criminal Appeals interpreted Oklahoma law as placing the decision whether to award presentence jail credits within the discretion of the sentencing court," and that the plaintiff merely alleged that the defendants "complied with the documentation they originally received from the court: a judgment and sentence that were silent as to the amount of credit for time served." *Id.* The court emphasized that the defendants "did act once they were properly notified of the mistake," i.e., "[o]nce Defendants received an amended judgment and sentence, serving as documentation supporting Plaintiff's allegations, Plaintiff was discharged." *Id.* The plaintiff argued the defendants could have corrected the error if they had called the

district attorney, but the court observed that, "[e]ven if Defendants had called, however, Plaintiff would have had to undergo the exact process that resulted in the amended judgment and sentence. Defendants would have had no authority to alter the original judgment based on any information they might have obtained from the District Attorney," which "bolster[ed] Defendants' argument that they lacked credible evidence, and hence, no constitutional violation ensued." *Id.* at *3 n.5.

Here, Plaintiff's *unsupported* assertions to Defendant Eastham, without more, are insufficient to demonstrate that she "knew" of Plaintiff's problem and "knew" that Plaintiff might be enduring unwarranted punishment in the form of overdetention. Plaintiff cites the sentencing mittimi in cases 2015CR1210 and 2015CR3729, both of which he incorporates in full in his Complaint, *see* [#1] at 4, 17, 27, as documentation which was eventually provided to Defendant Eastham. The mittimus from 2015CR3729 states that Plaintiff's sentence in that case was to be "consecutive" to the sentences in his other criminal cases, including 2015CR1210. Defendant Eastham allegedly interpreted the mittimi as showing that Plaintiff could not complete his two-year sentence in 2015CR1210 until he finished serving his sentence in 15CR3729, given that the mittimus from 2015CR3729 states that the sentences were to be consecutive. The mittimus from 2015CR1210, which was issued before the mittimus from 2015CR3729, does not mention 15CR3729, and thus there is no mention of whether the sentences in the two cases were concurrent or consecutive in that document.

Here, as in *Routt*, the mittimi appear to be facially valid judgments and sentences. When the issue was brought to Defendant Eastham's attention that there could be an inaccuracy in the documentation or in her interpretation of the documentation, she

directed Plaintiff to the courts for further help and corresponded with a paralegal working on Plaintiff's behalf to address the problem.  Even assuming that Defendant Eastham's interpretation of the mittimus was wrong, there is no indication that she was deliberately indifferent to Plaintiff's plight, that she took no action with respect to his problem, or that she took such ineffectual action as to be deliberately indifferent to Plaintiff's constitutional rights, at least for the first part of his re-incarceration.

However, the thrust of Plaintiff's claim under the Eighth Amendment (as well as under the Fourteenth Amendment, which the Court discusses in more detail below), is that he was incarcerated despite having completed his sentence and that Defendants, and here specifically Defendant Grace Eastham, knew this.  As best the Court can tell from the allegations in the Complaint [#1] and the argument offered in the briefs, Defendant Eastham had all of the necessary information before her no later than April 30, 2020, from which she could determine that Plaintiff should be released.  *Compl.* [#1] at 19-25.  There is no adequate explanation as to why Plaintiff was not released until May 11.  There may be more to the story than what is currently before the Court for consideration, such as whether a court order was actually required here and, if so, when that court order was issued, and discovery may bring to light additional information which could affect the viability of this claim.  Regardless, the Court finds that the allegations in the Complaint [#1] are sufficient at this early stage of the proceedings to state a claim for deliberate indifference under the Eighth Amendment for at least a portion of the time Plaintiff was held at the jail.

Thus, the Court turns to the second requirement of the qualified immunity analysis. In *Ortiz v. New Mexico*, No. CIV 18-0028 JB/LF, 2021 WL 3115577, at *70-79 (D.N.M.

July 22, 2021), the Court engaged in an extremely thorough examination of precedent from the Tenth Circuit Court of Appeals regarding when a right is clearly established for purposes of qualified immunity, ultimately finding that apparent contradictions in opinions issued by the Tenth Circuit meant that its "signals are not clear" concerning what exactly constitutes a "clearly established" right.  Sifting through these mixed signals, the *Ortiz* court concluded based on its comprehensive review that a government official  "is entitled to qualified immunity unless a plaintiff can demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established either (a) by a factually similar Supreme Court or Tenth Circuit case on point, or, in rare cases, by general constitutional principles, at the time of the alleged misconduct, or (b) because the conduct was particularly egregious such that any reasonable officer should have realized it was unlawful . . . ."  *Ortiz*, 2021 WL 3115577, at *79 (internal quotation marks and citations omitted).

Here, it is clear that there are "general constitutional principles that a prisoner has a due-process liberty interest in credit for jail time served . . . and a right under the Eighth Amendment's prohibition on cruel and unusual punishment to be released when his sentence ends."  *See Routt v. Howry*, 835 F. App'x 379, 382-83 (10th Cir. 2020) (citations omitted).  At a minimum, even assuming that Defendant Eastham complied with her duty to investigate Plaintiff's assertions that there had been an error in the calculation of his prison sentence, once Defendant Eastham allegedly had all of the necessary information before her that Plaintiff had completed his sentence and should no longer be held, then Plaintiff should have been released as soon as possible.  Here, there are no currently

identified extenuating circumstances which would make application of these general constitutional principles inappropriate.

Accordingly, the Court **recommends** that the Motion [#21] be **denied** to the extent Defendant Eastham seeks qualified immunity on Plaintiff's Eighth Amendment claim.

### c.   Fourteenth Amendment

The Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "An alleged violation of the procedural due process required by this clause prompts a two-step inquiry: (1) whether the plaintiff has shown the deprivation of an interest in 'life, liberty, or property' and (2) whether the procedures followed by the government in depriving the plaintiff of that interest comported with 'due process of law.'" *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). "A protected interest in liberty or property may have its source in either federal or state law." *Id.* "[A] state-created interest is not protected by the procedural component of the Due Process Clause unless the interest is an entitlement— that is, unless the asserted right to property or liberty is mandated by state law when specified substantive predicates exist." *Id.* By way of example provided by the Tenth Circuit Court of Appeals in *Elliott v. Martinez*:

> [I]f state law provides that a prison inmate is entitled to be released on parole when the inmate has not violated prison regulations for 10 years, then that interest in being released is a protected liberty interest: release is mandated when the substantive predicate (no violations for 10 years) is satisfied. The Due Process Clause would then require the state to provide a prisoner adequate procedures—say, notice and a hearing before prison officials—before it could hold him beyond 10 years on the ground that he had violated a prison regulation. But the liberty interest in being released on parole would not qualify for due-process protection if there were no substantive predicates that mandated release, as when there is no set of facts which, if shown, mandate a decision favorable to the inmate.

*Id.* (internal footnote, citation, quotation marks, and alterations omitted).

Here, Plaintiff essentially asserts that his protected interest is not serving additional time incarcerated on a sentence which he has completed, a point which Defendants do not contest.  *See Motion* [#21] at 6-7.  However, in the context of overdetention, in order "to establish a violation of due process, plaintiff must show that defendants were guilty of more than mere negligence."  *Sloan*, 2005 WL 2464678, at *1 (citing *Daniels v. Williams*, 474 U.S. 327, 334 (1986)).  Defendants assert that Plaintiff has not alleged more than mere negligence here.  *Motion* [#21] at 7.

For the same reasons stated above in connection with Plaintiff's Eighth Amendment claim, the Court finds that Plaintiff's allegations are adequate to state a Fourteenth Amendment claim.  To reiterate, based on the Complaint [#1], it appears that Defendant Eastham had all of the necessary information before her at least as of April 30, and yet Plaintiff was not released until May 11.  Under these circumstances, it could be inferred that Defendant Eastham violated Plaintiff's due process rights by failing to release him.  Thus, the Court finds that Plaintiff has stated a claim against Defendant Eastham under the Fourteenth Amendment.

In addition, for the same reasons stated above, the Court finds that the law was clearly established that Plaintiff had the right to release or, at a minimum, to a due process hearing once it become clear to Defendant Eastham that Plaintiff had completed his sentence.

Accordingly, the Court **recommends** that the Motion [#21] be **denied** to the extent Defendant Eastham seeks qualified immunity on Plaintiff's Fourteenth Amendment claim.

**2.       Declaratory/Injunctive Relief**

For the same reasons stated above in Section III.A.1.a., the Court finds that Plaintiff has failed to state a claim against Defendant Eastham under the Fourth Amendment.  Accordingly, the Court **recommends** that the Motion [#21] be **granted** to the extent Plaintiff seeks declaratory/injunctive relief with respect to his Fourth Amendment claim under Claim One.

In addition, for the same reasons stated above, the Court finds that Plaintiff has provided adequate allegations to state claims under the Eighth Amendment and the Fourteenth Amendment against Defendant Eastham.  According, the Court **recommends** that the Motion [#21] be **denied** to the extent Defendant Eastham seeks dismissal of these aspects of Plaintiff's Claim One.

**B.    Claims Two and Three**

Under the heading "Claim Two," Plaintiff asserts a Fourteenth Amendment claim against Defendant El Paso County Sheriff's Department.  *Compl.* [#1] at 8-10.  Under the heading "Claim Three," Plaintiff asserts a *Monell* claim against the Board of County Commissioners for the County of El Paso and the El Paso County Sheriff's Department. *Id.* at 10-12.  Although not presented as such, Plaintiff's Fourteenth Amendment claim under Claim Two is essentially a *Monell* claim, i.e., seeking liability of a municipal entity, the El Paso Sheriff's Department.

To assert a municipal liability claim, Plaintiff must allege that: (1) his constitutional rights were violated; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation(s).  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  Here, the Court finds that Plaintiff has failed to provide specific allegations demonstrating the existence of a custom or policy to support the second element of his

claims.  *See, e.g.*, *Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2013 WL 4799654, at *3 (D. Colo. Sept. 6, 2013).

In the absence of an official policy, official capacity claims can only survive if the challenged practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970)).  To prove a custom, therefore, a plaintiff must allege "[t]he existence of a continuing, persistent and widespread practice of unconstitutional misconduct."  *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).  A single incident of unconstitutional conduct is insufficient to plausibly suggest the existence of a custom or widespread practice.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985); *Starrett v. Wadley*, 876 F.2d 808, 820 (10th Cir.1989); *Murphy v. Bitsoih*, 320 F. Supp. 2d 1174, 1196-97 (D.N.M. 2004).  Because the Complaint [#1] does not provide allegations suggesting that anyone other than Plaintiff himself was ever subjected to the allegedly unconstitutional actions by Defendants, Plaintiff has not sufficiently alleged a viable claim based on the existence of a custom or practice.  *See, e.g.*, *Johnson v. Pelle*, No. 19-cv-02830-RM-KLM, 2020 WL 6119529, at *11 (D. Colo. Aug. 24, 2020).

In the absence of an adequately alleged custom or practice, Plaintiff must allege the existence of an official policy.  *See Tuttle*, 471 U.S. at 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability [against a municipality], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").  "In order to warrant liability, a municipal policy must be a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Lankford*, 73 F.3d at 286 (citation and internal quotation marks omitted).  Here, Plaintiff has not provided allegations to plausibly suggest that either the Board of County Commissioners for the County of El Paso or the El Paso County Sheriff's Department has adopted or promulgated any such policy statement, ordinance, regulation, or decision regarding the circumstances presented here.  Similarly, Plaintiff has not alleged any facts (as opposed to mere conclusions) to plausibly suggest that an official with final policymaking authority over this particular area of concern adopted or promulgated such a policy.  *See Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Therefore, the Court finds that Plaintiff fails to sufficiently allege the second prong of the municipal liability test.

Accordingly, the Court recommends that the Motion [#21] be **granted** to the extent that Plaintiff's Claim Two and Claim Three (to the extent asserted under *Monell*) be **dismissed without prejudice**.  *See Hicks v. Anderson*, No. 11-cv-00422-WJM-KMT, 2012 WL 1415338, at *7 (D. Colo. Jan. 23, 2012); *see also Brown*, 520 U.S. at 404; *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## C.    State Law Claims

Defendants seek dismissal of Plaintiff's state law claims under Claims Three, Four, and Five for lack of subject matter jurisdiction, arguing that Plaintiff failed to adequately comply with the notice requirements of the Colorado Government Immunity Act ("CGIA"). *Motion* [#21] at 12-14.   The CGIA's notice provision, Colo. Rev. Stat. § 24-10-109(1), provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not

by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of the claim or of a cause of action for such injury.  Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Failure to comply with the notice requirement is "an absolute bar to suit."  *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 393 (Colo. 2002).  Strict compliance with this part of the statute is not required, however.  *Finnie v. Jefferson Cnty. Sch. Dist. R-1*, 79 P.3d 1253, 1257 (Colo. 2003).  Rather, *substantial* compliance is adequate, meaning that a plaintiff must simply show that the CGIA notice was "timely, in writing, and evidence[d] a good faith effort to include each item of information set out in" Colo. Rev. Stat. § 21–10–109, i.e., the claimant's and the claimant's attorney's name and address, a "concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of," the name and address of any public employee involved, a statement of the nature and extent of the injury suffered, and a statement of the monetary damages requested.  *Katz v. Aurora*, 85 F. Supp. 2d 1012, 1031-32 (D. Colo. 2000).

Plaintiff attaches a copy of his CGIA notice to his Complaint.  *See Ex. C* [#1] at 26. Dated May 22, 2020, the letter was sent to the El Paso County Attorney's Office, is titled "Notice of Claim-Intent to Sue," and says:

Please take notice that the undersigned hereby provides formal notice that he is an aggrieved party who intends to state claims against certain agencies, agents and/or employees of the municipality you represent, who violated his constitutional and other state rights while acting under color of state law.

The undersigned intends to state claims against the Board of County Commissioners for the County of El Paso, the El Paso County Sheriff's

Office, El Paso County Jail Technician Grace Eastham, and other defendants of these county agencies as they become revealed in relation to the alleged constitutional violations which will be complained of in court.

This action arises as a result of actions by these agents/agencies which violated the undersigned's constitutional rights to due process, the right to be free from excessive confinement, false imprisonment, and cruel and unusual punishment.  Corresponding state claims include infliction of emotional distress, lost wages, and loss of consortium.  The defendants, through the unlawful and excessive confinement of the undersigned for a case he had already completed a sentence for, have proximately caused injuries to the undersigned, and he is entitled to redress pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1367, and other applicable state laws.

The undersigned shall be filing civil action in the United States District Court for the District of Colorado, for declaratory relief, compensatory relief, and an unspecified amount of damages.  This notice is being provided to you as counsel of record, for the above-named defendants within the time limits prescribed, pursuant to the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 et seq.  The undersigned hereby reserves the right to add claims and defendants as they become revealed, including claims in state court.

In *Sawyer v. Washington County Nursing Home*, No. 20-cv-01789-WJM-SKC, 2021 WL 877739 (D. Colo. Mar. 9, 2021), the Court addressed whether a plaintiff had substantially complied with the CGIA notice requirements.  The Court emphasized the importance that the notice letter (or other written notice) make "clear exactly what conduct the plaintiff challenged and the remedy sought."  *Sawyer*, 2021 WL 877739, at *4 (citing *Katz*, 85 F. Supp. 2d at 1031-32 (finding substantial compliance where unrepresented plaintiff wrote to city attorney, named public official defendants, described the circumstances of his discharge from employment and resulting loss of income, and stated that the letter constituted notice under § 20–10–109); *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 652 (Colo. App. 2006) (finding substantial compliance where letter contained names and addresses of plaintiffs and attorneys, identified public officials, described incident and injuries suffered, and enumerated losses for which damages were

sought); *Bresciani v. Haragan*, 968 P.2d 153, 159-60 (Colo. App. 1998) (finding substantial compliance where notice stated that law enforcement officers had damaged plaintiff and his family's personal property during a search, and that plaintiffs were "considering filing a civil rights action")).

Here, Plaintiff's notice contains almost no information about the facts underlying his intent to sue.  *See Ex. C* [#1] at 27.  Plaintiff does not mention the dates he was arrested, held, or released; the criminal cases or sentences which purportedly lead to his detention; or any information regarding his attempts to obtain his release from the jail. *See id.*   The letter is dated less than two weeks after Plaintiff was released from jail, and perhaps he simply believed that the parties seeing his letter would remember and know him and why he was suing.  Regardless, more is needed here.  As the *Sawyer* court stated, "[i]t is immaterial whether Defendant was able to speculate as to details of Plaintiff's claims."  2021 WL 877739, at *4 (citing *Jacob v. City of Colorado Springs*, 485 P.2d 889, 891 (Colo. 1971)).  "A finding of substantial compliance in this case would subvert the purpose of the CGIA's notice requirement and open the door for parties to satisfy the requirement with brief correspondence consisting of cursory and vague references . . . ." *Sawyer*, 2021 WL 877739, at *4.  Thus, the Court finds that Plaintiff has failed to substantially comply with the notice requirement of the CGIA.

Although dismissal based on subject matter jurisdiction is typically "without prejudice," dismissal under the CGIA is "with prejudice" where the jurisdictional deficiency cannot be cured.  *See Sawyer*, 2021 WL 877739, at *2, 4 (citing *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 839 (10th Cir. 2003)).  Here,

the 182-day deadline for Plaintiff to give notice has long since passed, and therefore he cannot cure the defects of his notice.  *See* Colo. Rev. Stat. § 24-10-109(1).

Accordingly, the Court **recommends** that Plaintiff's claims of respondeat superior, infliction of emotional distress, and negligence (including negligent hiring, negligent retention, negligent supervision, and negligent infliction of emotional distress) be **dismissed with prejudice**.

### IV.  Conclusion

Based upon the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#21] be **DENIED in part and GRANTED in part**.  The Court **recommends** that the Motion be **denied** with respect to Plaintiff's Eighth Amendment and Fourteenth Amendment claims asserted under Claim One.  The Court **recommends** that the Motion be **granted** to the extent that Plaintiff's Fourth Amendment claim asserted under Claim One, as well as Claims Two, Three, Four, and Five, be **dismissed** as outlined above.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo

review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: September 16, 2021                    BY THE COURT:

                                             Kristen L.  Mix
                                             United States Magistrate Judge